UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re: THE HYMAN COMPANIES,   :   Chapter 11
       Debtor   :   Case No. 09-20523REF

# MEMORANDUM OPINION (1) OVERRULING IN PART AND SUSTAINING IN PART DEBTOR'S SUPPLEMENTAL OBJECTION TO ANSEL CLAIM AND (2) RESOLVING ANSEL'S MOTION TO DETERMINE DEBTOR'S OBJECTION TO CLAIM

## I.  INTRODUCTION

After a day of hearing testimony and receiving exhibits and upon the filing by the parties of numerous pages of briefs with attachments, I will now decide this dispute. This case is based on the firing of Roberta Ansel by Debtor in retaliation for her complaining to government agencies that Debtor was cheating on its compensation to its employees. Ansel sued Debtor in Massachusetts state court because it wrongfully and unlawfully fired her. Ansel obtained a substantial award and judgment in Massachusetts earlier this year. She had filed a claim in this case before final resolution of the suit in Massachusetts, seeking a bit more than $410,000, asserting that about $292,000 of her claim was entitled to priority

1

treatment.    Her initial claim proved to be higher than her actual award of damages, which is more than $294,000.

Debtor had objected to Ansel's initial claim, claiming nothing was actually owed to Ansel and, if something were owed, it was entitled to no priority. Debtor filed a Supplemental Objection to Ansel's claim after the state court judgment was rendered.    Debtor's Supplemental Objection asserted two defenses: First, Ansel's recovery is limited by Section 502(b)(7) and second, certain components of Ansel's claim are barred by Section 15.1 of Debtor's confirmed plan of reorganization.

I find and conclude that (1) to the extent it is based on Section 502(b)(7) as a defense, Debtor's Supplemental Objection to Roberta Ansel's claim is barred by Debtor's two-year delay in raising its Supplemental Objection and (2) if I were to assume that Debtor is not time-barred from raising Section 502(b)(7), I also reject the Section 502(b)(7) defense in its Supplemental Objection on the equitable ground of laches.    Finally, I conclude that Section 502(b)(7) is substantively inapplicable to reducing Ansel's claim in any way.

I also find and conclude that the portion of Debtor's Supplemental Objection based on Section 15.1 of its confirmed plan of reorganization is not time-barred, but is not as wide-reaching as Debtor asserts.    The confirmed plan of

2

reorganization binds Debtor and all of its creditors, including Ansel. I will apply

the limitations of Section 15.1 to Ansel's claim and subtract post-petition interest,

post-petition attorneys' fees, and post-petition court costs from her claim. Because

the evidence thus far presented provides me with no basis on which to distinguish

between pre- and post-petition interest, attorneys' fees, and court costs, I will

require the parties to stipulate to the appropriate amounts or determine them

through a hearing.

Disposing of the Supplemental Objection to Ansel's claim effectively

disposes of Ansel's motion to determine objections to her claim as moot.

If and to the extent that some determination is made that I do not have

the power to make a final decision of this matter involving an objection to a claim,

the findings of fact and conclusions of law throughout my discussion in this

Memorandum Opinion shall constitute my formal findings of fact and conclusions

of law for any reviewing court.

# II.  PROCEDURAL BACKGROUND

Debtor filed its Chapter 11 petition on March 3, 2009.  On June 22, 2009, Ansel filed her claim, in which she alleged that she held an unsecured claim against Debtor in the total amount of $410,886, $292,036 of which she claimed was entitled to priority status as wages under Section 507(a)(4) of the Bankruptcy Code, 11 U.S.C. §507(a)(4).   Ansel's claim was based on her wrongful discharge/statutory retaliation complaint that she had filed against Debtor in Massachusetts state court in 2005, before Debtor's bankruptcy filing.[1]

Debtor timely filed its original objection to Ansel's claim on January 26, 2011.  Debtor's initial objection raised two issues:  (1) Under Massachusetts law, Ansel had no valid claim to the relief sought in the Massachusetts state court action; and (2) if Ansel had a claim, no portion of her claim was entitled to priority as wages under 11 U.S.C. §507(a)(4).  In its original objection, Debtor purported to reserve its right to file additional objections at a later date.

---

[1]     Ansel's Massachusetts complaint was captioned <u>Ansel v. Hyman Companies, Inc.</u>, Docket No. MICV2005-01534.  Her complaint raised a claim under Massachusetts General Laws ("M.G.L.") c. 149 §148AQ, which is violated when an "employer . . . discharges . . . any employee because such employee has made a complaint to the attorney general or any other person."  Ansel claimed that Debtor violated this statute when it terminated her employment following her complaints and reports to the Massachusetts Attorney General about Debtor's improper wage practices.  She successfully claimed that Debtor's termination of her employment was motivated by retaliatory animus.  Debtor and Ansel litigated the Massachusetts action through discovery, summary judgment (which had been denied), and trial preparation before Debtor filed this Chapter 11 proceeding, thereby automatically staying all pending litigation.  By my Order dated July 5, 2011, I permitted Ansel to resume the Massachusetts litigation.

On July 5, 2011, I entered an Order through which I discretionarily abstained from hearing Debtor's original objection to Ansel's claim under Massachusetts law. I directed that the parties return to the Massachusetts state court to resolve the merits of her claim. I further noted that I could decide any alleged priority of Ansel's claim under Section 507(a)(4) after the Massachusetts court ruled on the merits. Debtor mentioned nothing about holding or asserting an objection to Ansel's claim based on the alternative grounds of Bankruptcy Code Section 502(b)(7) and Section 15.1 of Debtor's Second Amended Plan, which was confirmed on December 29, 2010 (the "Plan"). Debtor moved for reconsideration of my July 5, 2011 decision, which I denied through my Order entered on September 27, 2011. Debtor then filed a motion to reopen the record and yet another motion for reconsideration of my September 27, 2011 decision, both of which I denied on November 3, 2011.

The jury in the Massachusetts court decided the underlying, substantive merits of Ansel's claim by deciding in Ansel's favor and awarding her damages for her wrongful discharge/statutory retaliation claim. Ansel then petitioned the Massachusetts judge for attorneys' fees and costs as the prevailing plaintiff under Massachusetts statute, M.G.L. c.149, §150. The court entered judgment in Ansel's favor on September 25, 2012 in the aggregate amount of $294,523.11, comprised of: (1) $60,000 damages; (2) interest from May 5, 2005 to

5

September 25, 2012, in the amount of $53,260.74; (3) attorneys' fees in the amount

of $179,039; and (4) court costs in the amount of $2,223.37. Debtor elected not to

appeal the judgment, which is therefore final.

Ansel has agreed to withdraw her request for priority status of any of

her claim under Section 507(a)(4).[2]

On February 14, 2013, Debtor filed its Supplemental Objection to

Ansel's claim. Debtor raised the following two issues: (1) Ansel's claim must be

capped at the equivalent of one years' wages (approximately $35,000) pursuant to

Section 502(b)(7) of the Bankruptcy Code, 11 U.S.C. §502(b)(7); and (2) Ansel is

entitled to no post-petition interest, no attorneys' fees, and no court costs by virtue

of Section 15.1 of the Plan.[3] Ansel responded by arguing that Debtor's entire

Supplemental Objection is barred because Debtor failed to file it until after

expiration of the bar date for filing claim objections. Ansel also argued that

Debtor's Supplemental Objection should be overruled on equitable grounds.

Finally, Ansel claimed that neither Section 502(b)(7) of the Bankruptcy Code nor

Section 15.1 of Debtor's Plan apply to her claim except that the latter prohibits her

from recovering post-petition interest.

---

[2]      This is no big concession. Section 3.2 of Debtor's Plan provides that all allowed unsecured
creditors will be paid at least 100% of their claim. She need not litigate whether her claim does or does
not constitute a priority claim for wages because her claim, as allowed, will be paid in full as dictated by
Section 3.2 of Debtor's Plan.
[3]      Article XV, Section 15.1, of the Plan prohibits any unsecured creditor from receiving post-
petition interest, late charges, penalties, attorneys' fees, or court costs on account of their claims.

# III.  SHORT SUMMARIES OF CONCLUSIONS

First, Debtor's reliance on Section 502(b)(7) in its Supplemental Objection is time-barred because it was filed after the bar date for filing objections to claims.  Debtor's own Plan fixed February 12, 2011, as the bar date for filing objections to claims,[4] yet Debtor filed its Supplemental Objection to Ansel's proof of claim two years later, on February 14, 2013.[5]  Because Debtor failed to raise its Section 502(b)(7) defense in its original objection to Ansel's claim or in some other timely objection, Debtor is barred from advancing this defense and its Section 502(b)(7) defense must be rejected.

Second, Debtor's reliance on Section 502(b)(7) in its Supplemental Objection is denied on equitable grounds, specifically laches.

Third, assuming that Debtor's attempt to raise Section 502(b)(7) in its Supplemental Objection is not time-barred and should not be denied on the basis of laches, I reject Debtor's substantive argument that Ansel's claim must be reduced pursuant to Section 502(b)(7).  Ansel had no employment contract with Debtor and her claim against Debtor was not based on any breach of an employment contract

---

[4]        Article XIV, Section 14.1, of the Plan permitted Debtor and the Creditors' Committee to object to any claim on the latter of (1) 30 days after the Effective Date (January 13, 2011), which was February 12, 2011, or (2) 30 days after a timely claim was filed, which in this matter was well before the alternative deadline.  All claim objections, therefore, were due to be filed on or before February 12, 2011.
[5]        Debtor timely filed its original objection to Ansel's claim on January 26, 2011.

that provided damages upon its termination.  Instead, Ansel's claim is a wrongful

discharge/statutory retaliation claim based upon protections afforded to her solely

by Massachusetts statute.  I agree with Ansel that the substance of Section

502(b)(7) does not apply to claims such as hers.

Fourth, I conclude that Debtor may object to the post-petition interest,

attorneys' fees, and court costs components of Ansel's damage claim because these

items are (and were at the time I considered Debtor's original objection to Ansel's

claim) expressly barred by Section 15.1 of the Plan.  My order confirming the Plan

constitutes a final judgment on the merits with respect to all issues addressed in the

Plan.  The terms of the Plan are therefore binding on all parties, Debtor and its

creditors alike.  Debtor may contest the post-petition interest, attorneys' fees, and

court costs portions of Ansel's claim as being barred by the Plan despite having

filed the Supplemental Objection after the objection bar date.

Fifth, turning to the merits of Section15.1, I reject Ansel's argument

that Section 15.1 does not apply to her claim.  I also reject Debtor's interpretation

of Section 15.1 as barring unsecured creditors from recovering both pre- and post-

petition attorneys' fees and pre- and post-petition court costs in addition to post-

petition interest.  To the contrary, Section 15.1 prohibits Ansel from collecting that

portion of her interest, attorneys' fees, and court costs that were incurred post-

petition.

8

Sixth, I cannot determine from the record before me, however, what portions of Ansel's claim for interest, attorneys' fees, and court costs are pre-petition and what portions are post-petition. I will therefore require that the parties calculate, negotiate, prepare, and file a stipulation identifying both the pre-petition and the post-petition components of each component of Ansel's claim. I anticipate (unfortunately) that the parties might not be able to reach a stipulation, so I will also schedule a hearing for the parties to present evidence to establish the pre- and post-petition interest, pre- and post-petition attorneys' fees, and pre- and post-petition court costs awarded to Ansel by the Massachusetts court.[6] I will then recognize the pre-petition amounts as allowed portions of Ansel's claim against Debtor in this bankruptcy proceeding.[7]

Seventh and finally, because my decision on the merits of Debtor's Supplemental Objection eliminates all open issues relating to Ansel's claim, I will deny as moot, her motion to determine objections to her claim.

---

[6]    Obviously, a hearing will be unnecessary if the parties are able to achieve a stipulation on the arithmetic calculations.

[7]    I note (and the parties implicitly concede) the obvious — the total maximum possible amount of Ansel's claim is reduced to conform to the decision and award of the Massachusetts court ($294,523.11), which is less than Ansel demanded in her claim ($410,886). This is not to say that Debtor concedes Ansel is entitled to the full amount of the judgment – it does not. To the contrary, Debtor opposes the amount of principal and the inclusion in the claim of all post-petition interest, all attorneys' fees, and all court costs. I am saying only that the total maximum claim by Ansel appears to be uncontested at $294,523.11. This is also not to say that Ansel cannot argue that interest under the express provisions of the Plan might increase the amount she might recover.

# IV.  DISCUSSION

## A. Debtor's Section 502(b)(7) Defense Is Time-Barred

Debtor's Plan established February 12, 2011, as the bar date for filing objections to proofs of claim.  Debtor filed its Supplemental Objection to Ansel's claim on February 14, 2013, two years later.  Debtor's Supplemental Objection is therefore barred as untimely filed.  See In re Enron Corp., No. 01-16034(AJG), 2006 WL 897842, *3-4 (Bankr. S.D.N.Y. March 24, 2006); Holly's, Inc. v. City of Kentwood (In re Holly's, Inc.), 172 B.R. 545, 564-65 (Bankr. W.D. Mich. 1994).  As in Holly's, Inc., Debtor established a post-confirmation deadline in its Plan for objections to claims.  Debtor failed to include any reference at all to Section 502(b)(7) in its original objection to Ansel's claim even though Debtor was required to include all of the legal and factual grounds to support its objection when its original objection was filed.

> [A] debtor is not entitled to utilize the filing of amended or supplemental objections in order to file successive and repeated objections to the claim of a creditor.  The filing of such successive and repeated objections, even if based on different grounds, is unduly burdensome and prejudicial to creditors who are subjected to such tactics.

In re Catron, 198 B.R. 908, 909 (Bankr. M.D.N.C. 1996).

10

I agree that Ansel should not be subjected to such a tactic.  Because Debtor failed to raise its defense based on Section 502(b)(7) in its original objection to Ansel's claim, Debtor's Supplemental Objection on that basis is time-barred and must be rejected.  In re Nazu, Inc., 350 B.R. 304, 311 (Bankr. S.D. Tex. 2006).  See also In re Greater SE Community Hospital Foundation, No. 99-1159, 2001 WL 1173496, *4-6 (Bankr. D.D.C. Sept. 28, 2001); Catron, 198 B.R. at 909; In re Mall at One Assocs., L.P., 185 B.R. 1009, 1015 (Bankr. E.D. Pa. 1995).

Debtor argues that I should consider the merits of its Section 502(b)(7) defense, even though Debtor filed it after the bar date, because courts generally favor determining matters on their merits.  Although I generally agree with that judicial philosophy, I disagree that it should be applied to this dispute.  When an objection is filed by a debtor after a bar date set by the debtor, I will not overlook its tardy nature to create an opportunity to rule on the merits.  Enron Corp., 2006 WL 897842 at *4.  Although it plays no part in my decision, I cannot avoid mentioning in the face of Debtor's plea for my equitable consideration that the Massachusetts court determined that Debtor had wrongfully fired Ansel in retaliation for her complaining about Debtor's allegedly improper compensation policies and practice.

Debtor also argues that the issues raised in its Supplemental Objection are not time-barred because its original objection contained a reservation of rights

11

clause that stated, "The Debtor reserves the right, without any limitation to the
grounds, to file additional objections to the Claim.  Separate notice and hearing
will be provided and scheduled for any such objection."  See Debtor's original
objection to Ansel's proof of claim, ¶22.  Again, I disagree.  This type of
"reservation of rights" language is insufficient to provide proper notice of an
objection that may be filed in the future and may not be used by Debtor to justify
its tardy (two years late) filing of the Supplemental Objection.  "Any assertion that
rights are being reserved is spurious. . . .   The language in the [objection]
announcing an intention to amend had no legal effect and will be ignored as
opposed to stricken."  Lichtenstein v. First National Bank of Chester County (In re
Moll Group., LLC), Adv. Nos. 04-1113, 04-1115, Bankr. No. 02-38198, 2005 WL
6506459, at *10 (Bankr. E.D. Pa. June 15, 2005).

A similar approach was followed by the court in Burtch v. Dent (In re
Circle Y of Yoakum, Texas), 354 B.R. 349, 357 (Bankr. D. Del. 2006).   The
Circle Y court found that a reservation of right to amend clause in a complaint was
ineffective.  To rule otherwise, the court warned, might encourage a party to insert
similar language in every pleading and declare later that the opposing party had
sufficient notice of any amendment made to the pleading.  Burtch, 354 B.R. at 357.
Debtor followed a similar approach in this case, attempting to use similar
"reservation of rights" clauses in every objection it filed to proofs of claim in this

12

case.[8] I agree with those courts that have found this approach spurious and appropriately ignored.

Finally on this issue, had Debtor provided timely notice of its new objection, perhaps Ansel could have addressed it through proposed findings in the Massachusetts litigation. We cannot know whether that would have occurred, however, because Debtor failed to provide any such notice.

## B. Debtor's Section 502(b)(7) Argument Is Contrary to Equitable Standards

### 1. Judicial estoppel

Ansel raises this equitable issue, so I will address it. To support its argument that Section 502(b)(7) limits Ansel's claim, Debtor alleges that an employment contract existed between itself and Ansel. Ansel argues that judicial estoppel precludes Debtor from taking this position because she says it is inconsistent with the position Debtor advanced before the Massachusetts court. Ansel claims that Debtor argued in Massachusetts that no employment contract existed between the parties. I cannot conclude that judicial estoppel is in effect in this dispute because Ansel failed to provide me with a citation or reference to any

---

[8]      See Doc. Nos. 798, 800, 802, 804, 807, 809, 811, 813, 815, and 819, all on the Docket of this case, which object to Claim Nos. 1, 15, 52, 71-73, 23, 33, 31, 2, 11-13, 19, and 55, respectively. Doc. No. 817 on the Docket is Debtor's objection to Ansel's claim, which is Claim No. 41.

record in which Debtor did what Ansel suggests.  The absence of support for the

foundation of her argument leads me to reject her argument.

It is true that judicial estoppel bars a party from asserting a position

that is "irreconcilably inconsistent" with a position previously advanced before a

court.

> Three requirements must be met before a . . . court may properly
> apply judicial estoppel. First, the party to be estopped must have taken
> two positions that are irreconcilably inconsistent. Second, judicial
> estoppel is unwarranted unless the party changed his or her position
> "in bad faith—i.e., with intent to play fast and loose with the court."
> Finally, a ... court may not employ judicial estoppel unless it is
> "tailored to address the harm identified" and no lesser sanction would
> adequately remedy the damage done by the litigant's misconduct.

Feldman v. Chase Home Finance (In re Image Masters, Inc.), 421 B.R. 164, 191

(Bankr. E.D. Pa. 2009), quoting Montrose Medical Group Participating Savings

Plan v. Bulger, 243 F.3d 773, 779-80 (3d Cir. 2001).  The Feldman decision was

reversed and remanded on other issues.

But Ansel failed to substantiate the factual predicate of this argument

and I cannot therefore accept it.  I conclude that judicial estoppel does not bar

Debtor from arguing in this Court that an employment contract existed between

Debtor and Ansel.

14

## 2.  Laches

To establish her second alleged equitable bar, laches, Ansel must show an unexcused or unreasonable delay by Debtor that resulted in prejudice to Ansel from Debtor's sandbagging.  After Six, Inc. v. Abraham Zion Corp. (In re After Six, Inc.), 167 B.R. 35, 44 (Bankr. E.D. Pa. 1994).  When the applicable limitations period expired, as it has in this case, the burden shifts from the party asserting laches, Ansel, to the dilatory party, Debtor, to prove both that Debtor's delay was excusable and that Debtor's delay did not prejudice Ansel.  Santana Products, Inc. v. Bobrick Washroom Equipment, Inc., 401 F.3d 123, 139 (3d Cir. 2005).

Debtor offered no excuse whatsoever for its two-year delay in raising Section 502(b)(7) in its Supplemental Objection to Ansel's claim.  In addition, Debtor failed to establish that Ansel suffered no prejudice from Debtor's late raising of this defense.  Debtor might have been able to change her litigation approach in the Massachusetts court had she known that Debtor would eventually advance Section 502(b)(7) to reduce her claim.  Again, we cannot know if the Massachusetts litigation would have proceeded differently, perhaps with specific findings by the jury or the court or both on the employment contract issue.  Laches

therefore constitutes an equitable bar that prevents Debtor from relying on Section 502(b)(7) to reduce Ansel's claim.

## C. **Debtor's Section 502(b)(7) Argument Cannot Apply to Ansel's Claim**

Normally in claim disputes, I determine the amount owed pursuant to the filed claim and then simply allow the claim in such amount. Section 502(b)(7), however, provides an exception and an extra step to that procedure. A claim subject to Section 502(b)(7) is allowed:

> [E]xcept to the extent that ---
>
> * * *
>
> (7) if such claim is the claim of an employee for damages resulting from the termination of an employment contract, such claim exceeds
>
> > (A) the compensation provided by such contract, without acceleration, for one year following the earlier of
> >
> > > (i) the date of the filing of the petition; or
> > >
> > > (ii) the date on which the employer directed the employee to terminate, or such employee terminated, performance under such contract; plus
> >
> > (B) any unpaid compensation due under such contract, without acceleration, on the earlier of such dates;
>
> * * *

11 U.S.C. §502(b)(7).

Ansel correctly notes that the widely recognized purpose of Section 502(b)(7) is to limit "employee damage claims, especially those of officers, owner-managers, and other key executives who had been able to exact favorable long term contracts calling for substantial remuneration." In re Lavelle Aircraft Co., Bankr. No. 94-17496DWS, 1996 WL 226852, at *5 (Bankr. E.D. Pa. May 2, 1996). The underlying policy is to limit exorbitant damage claims of key employees that unreasonably compromise a debtor's ability to reorganize and work to the detriment of other creditors. In re Murray Industries, Inc., 114 B.R. 749, 752 (Bankr. M.D. Fla. 1990). This underlying policy does not apply here. Ansel was not a key employee who exacted a long term contract that called for substantial remuneration and Debtor's Plan provides a 100% recovery to all unsecured creditors. Debtor failed to provide any evidence that its ability to complete its reorganization and the claims of other creditors would be compromised by Debtor's payment of Ansel's claim.

Ansel also argues that Section 502(b)(7) is inapplicable to her claim because the parties had no employment contract. Debtor introduced four documents in its attempt to establish some employment contract between the parties: (1) Debtor's letter to Ansel, dated January 24, 1995, and signed only by a representative of Debtor, which letter offered employment to Ansel (Exhibit D-1);

17

(2) a so-called "Agreement," dated February 11, 1995, signed only by Ansel,[9]

which dictates (A) Ansel's 180-day probationary employment, (B) the wholly at-

will nature of Ansel's employment, (C) Ansel's covenant not to compete, and (D) a

number of releases of Debtor by Ansel  (Exhibit D-2); (3) an employee handbook

dated February 2004 that was not signed by Ansel and that was expressly declared

to be subject to change at any time (Exhibit D-3); and (4) a so-called "Employee

Acknowledgement," signed only by Ansel, dated February 21, 2004, in which

Ansel acknowledged both that she had read the Employee Handbook and the New

Employee Packet and that no contract existed between Debtor and herself (Exhibit

D-4).

This latter document is amazing in its destruction of Debtor's Section

502(b)(7) argument.  Debtor presented a document in which Ansel was told to

acknowledge that no contract existed between Debtor and herself.  This fact alone

destroys any effort of Debtor to attack the amount of Ansel's claim on the basis of

Section 502(b)(7).

These documents, taken individually or together, fail to constitute an

employment contract between Debtor and Ansel.  Obviously, documents signed

only by a representative of Debtor or by Ansel (but not both) do not form any

---

[9]    The "Agreement" contains no signature line for a representative of Debtor to sign and nowhere in
its language does it recite anything along the lines of "Debtor and Ansel agree to . . ."

employment contract. As emphasized above, the Employee Acknowledgment,[10] signed only by Ansel, expressly declares that no employment contract exists between Debtor and Ansel.

In addition, Section 502(b)(7) limits an employee's claim for damages resulting from termination of an employment contract to the compensation provided under the contract for one year following the earlier of the date of termination or the date of the filing of the petition plus any unpaid compensation due on that date.   None of Debtor's testimony or exhibits, however, provide the terms of compensation that Ansel would receive on the date of her termination, rendering immeasurable the compensation that would be owed to Ansel under Section 502(b)(7).

Finally, and equally important, if an employment contract existed between Debtor and Ansel, I agree with Ansel (and those courts that have ruled) that Section 502(b)(7) does not apply to an employee's claim for damages based on the employer's breach of a statute or public policy.   For the purposes of determining whether Section 502(b)(7) caps an employee's claim, I distinguish between a claim brought for breach or termination of an employment contract and

---

[10]      The employee handbook cannot constitute an employment contract under Massachusetts law. Debtor retained the right to unilaterally modify the handbook at any time, Debtor and Ansel did not negotiate the language of the handbook, and the handbook does not stipulate a specific term of employment. Raggaele v. Ryder Dedicated Logistics, Inc., 931 F. Supp. 76, 79 (D. Mass. 1996); see also Pearson v John Hancock Mutual Life Insurance Co., 979 F.2d 254, 256 (1st Cir. 1992).

a claim of wrongful discharge.  In the former claim, the damages are awarded

based on the termination or breach of the contract.  In a wrongful discharge action,

the claim arises and damages are awarded based upon the employer's violation of a

statute or public policy.

Section 502(b)(7) caps only those claims that are based on the

employer's breach or termination of an employment contract with an employee.

Furthermore, Section 502(b)(7) can be applied only when the contract specifically

enumerates the compensation to be paid to the employee for performance of her

duties.  It does not apply to an employee's claim for wrongful discharge based on

the employer's violation of some statute or public policy.  See In re Ajay Sports,

Inc., 370 B.R. 703, 710-13 (Bankr. E.D. Mich. 2007); In re Visiting Nurses

Association, 176 B.R. 748, 751-52 (Bankr. E.D. Pa. 1995).  The legislative history

of Section 502(b)(7) and the concerns that Congress sought to address when it

enacted Section 502(b)(7) both point to this analysis.

As the court stated in Ajay Sports:

> Where the statutory language is clear, the proper role for the
> Bankruptcy Court is to apply it as written. The Court need only
> look at legislative history where the law is ambiguous and resort
> to legislative history can assist the Court in applying the law. That
> is not the case here. The Court considers §502(b)(7) to apply on
> its face only to claims for damages resulting from termination of
> an employment contract and an examination of the action brought
> by [claimant] convinces the Court that the damages that were

awarded to him resulted from a tort and did not result from termination of an employment contract. Nonetheless, it is still helpful to note that the Court's conclusion in this regard is consistent with the policies that are articulated in §502(b)(7) as reflected by its legislative history. In discussing the legislative history of this provision, the court in US. Truck Co. v. Teamsters National Freight Industry Negotiating Committee (In re U.S. Truck Co.), 89 B.R. 618 (E.D. Mich.1988) noted that "[t]his clause is intended principally to apply to long-term contracts providing substantial compensation to management executives of corporate debtors." 89 B.R. at 627 (relying on "the report of the Commission on the Bankruptcy Laws of the United States, which originally proposed this exception and whose draft was adopted almost word for word") (internal quotation marks and citation omitted).

Similarly, the Court in In re Gee & Missler Services, Inc., 62 B.R. 841 (Bankr. E.D. Mich.1986) described the purpose of §502(b)(7) as follows:

> Section 502(b)(7) was designed, as commonly assumed, to limit the claims of key executives -- employees, who for one reason or another, were able to exact long-term contracts calling for substantial remuneration. . . .

> * * *

> The thrust of section 502(b)(7) is to limit claims arising out of the rejection of an executory contract. Section 502(b)(7) limits a claim for future compensation, which conceivably would have been earned had the parties continued to perform under the terminated contract.

62 B.R. at 844-45. Although not necessary to its holding, in the Court's view, [claimant]'s claim for tort damages under Michigan law is not the type of claim that § 502(b)(7) was intended to cap.

Because [claimant]'s claim is not based upon damages resulting from termination of an employment contract, it is not within § 502(b)(7). Accordingly, the Debtors' objection must be denied.

Ajay Sports, 370 B.R. at 712-13.

The circumstances surrounding Ansel's discharge from her employment are very similar to the circumstances of the claimants in both Ajay Sports and Visiting Nurses. The sole basis of the Massachusetts litigation was whether Ansel was discharged in retaliation for blowing the whistle on Debtor's violation of a state employment wage statute. The damages awarded by the Massachusetts court "were not on account of, nor did they result from, breach or termination of any employment contract, but rather were awarded based upon the . . . duty not to retaliate against an employee [that] arises independently from the employment contract" under public policy. Ajay Sports, 370 B.R. at 712.

Debtor urges me to follow the approach of the courts in Belson v. Olson Rug Co., 483 B.R. 660 (N.D. Ill. 2012) and In re FairPoint Communications, Inc., 445 B.R. 271 (Bankr. S.D.N.Y. 2011). I disagree with the analysis of those courts, however, and find that the reasoning and analysis of the courts in Ajay Sports, 370 B.R. at 712, and Visiting Nurses, 176 B.R. at 751-52, to be more persuasive. The courts in Ajay Sports and Visiting Nurses strictly construe Section 502(b)(7) to avoid an unfortunate result to an innocent employee. For all of the above reasons, Section 502(b)(7) does not limit or reduce Ansel's claim.

## D.  Debtor May Object to Ansel's Claim to the Extent It Includes Post-Petition Interest, Attorneys' Fees and Court Costs

Debtor's Supplemental Objection also takes issue with that portion of Ansel's claim that seeks post-petition interest, all attorneys' fees, and all court costs because Debtor maintains that these portions of Ansel's claim are barred by Section 15.1 of the Plan.  Ansel protests that Debtor waived this defense to her claim, similar to the waiver of Section 502(b)(7).  She maintains that the Supplemental Objection is time-barred because it was filed after the deadline for filing objections to claims.[11]  The limitation on claims expressly set forth in the Plan is entirely different from the bar prohibiting Debtor's defense based on Section 502(b)(7).

A confirmation order constitutes a final judgment on the merits with respect to all issues addressed in a plan of reorganization.  Eastern Minerals & Chemicals. Co. v. Mahan, 225 F.3d 330, 336, n.11 (3d Cir. 2000); Donaldson v. Bernstein, 104 F.3d 547, 554 (3d Cir. 1997).  As a final judgment on the merits, a confirmation order bars a party from relitigating express provisions of a plan.  Stoll v. Gottlieb, 305 U.S. 165, 174 (1938); Peltz v. Worldnet Corp. (In re USN Communications, Inc.), 280 B.R. 573, 592 (Bankr. D. Del. 2002).  In addition, the confirmation of a Chapter 11 plan invokes principles of general contract law.

---

[11]    See Section IV. A., at pp. 10-13, supra.

23

Under the Bankruptcy Code, a confirmed plan of reorganization acts like a contract and is binding on all parties, debtors and creditors alike. First Union Commercial Corp. v. Nelson, Mullins, Riley & Scarborough (In re Varat Enter., Inc.), 81 F.3d 1310, 1315 (4th Cir. 1996); Cohen v. TIC Financial Systems (In re Ampace Corp.), 279 B.R. 145, 160 (Bankr. D. Del. 2002).

Section 12.1 of the Plan provides that "On the Effective Date, all provisions of this Plan shall be binding upon the Reorganized Debtor, all Creditors [which includes Ansel], and all other Entities who are affected in any manner by the Plan." Ansel and her counsel were properly served with Debtor's Plan, disclosure statement, voting ballot, and all related documents. Not only did Ansel fail to object to confirmation, she actually voted to accept the Plan. As such, Ansel is bound by the terms of Debtor's Plan, including Section 15.1, which prohibits unsecured creditors from recovering "post-petition interest, . . . attorneys' fees, or court costs on account of their Claims."

## E. Section 15.1 of the Plan Bars Unsecured Claims to the Extent They Include Post-Petition Interest, Attorneys' Fees and Court Costs

Ansel suggests that Section 15.1 of the Plan does not apply to her claim for interest, attorneys' fees, and court costs because the interest, attorneys' fees, and court costs awarded to her by the Massachusetts state court are "part of

24

her claim" and are not "on account of her claim." I cannot distinguish a difference between interest, attorneys' fees, and court costs that are "part of" a creditor's claim and interest, attorneys' fees, and court costs that are "on account of" a creditor's claim. Ansel has not eased my difficulty with guidance from other courts. In both of the two phrases, interest accrued on the damages awarded by the court and, in both of the two, a claimant incurred attorneys' fees and court costs to establish a claim against Debtor. Ansel failed to cite any authority that supports her argument that some distinction exists under either Massachusetts or bankruptcy law between (A) interest, attorneys' fees, and court costs that are "part of" a claim and (B) interest, attorneys' fees, and court costs that are "on account of" a claim. Her argument relies heavily on semantics and she is attempting to elevate form over substance. I see no meaningful difference between the two phrases. I conclude that Section 15.1 of Debtor's Plan applies to that portion of Ansel's claim that seeks interest, attorneys' fees, and court costs.

## F. <u>Section 15.1 of Debtor's Plan Bars Post-Petition Interest, Post-Petition Attorneys' Fees, and Post-Petition Court Costs</u>

Having determined that Section 15.1 of Debtor's Plan applies to interest, attorneys' fees, and court costs contained in Ansel's claim, I next address

the parties' divergent interpretations of Section 15.1, which provides, in pertinent

part, as follows:

> **15.1 Waiver of Interest, Penalties, Attorneys' Fees.**
> Except as otherwise specifically provided for in the Plan and Section
> 503(b)(4) of the Bankruptcy Code, Creditors holding Unsecured
> Claims shall not assert, nor shall they be entitled to, post-petition
> interest, late charges, penalties, attorneys' fees, or court costs on
> account of their Claims. . . .

Debtor's Plan, Section 15.1.

Debtor maintains that the term "post-petition" found in Section 15.1

modifies only the first term, "interest," in the list of five terms.   Debtor therefore

posits that Section 15.1 prohibits an unsecured creditor from collecting any post-

petition interest, any attorneys' fees, and any court costs (and any late charges and

penalties), whether incurred pre- or post-petition, as part of its claim.  Pursuant to

Debtor's reading of Section 15.1, a claim may consist of only the principal debt

and pre-petition interest.[12]   Ansel, on the other hand, submits that the phrase "post-

petition" in Section 15.1 modifies all of the five terms that follow it.  Section 15.1,

she argues, bars unsecured creditors from collecting post-petition interest, post-

petition attorneys' fees, and post-petition court costs[13] as part of their claims.

---

[12]      Debtor's treatment of the claims filed by other creditors is interesting, but not instructive.  Debtor
resolved and settled all issues relating to attorneys' fees, interest, and costs of other creditors' claims
without my intervention.  See Declaration of Douglas G. Leney, Esquire, in Support of Debtor's
Submission, etc., filed on July 18, 2013, and Supplement in Support of Ansel's Motion, etc., filed on July
22, 2013.
[13]      And, although they do not enter into this claim dispute, Ansel claims that Section 15.1 also bars
post-petition late charges and post-petition penalties.

Section 15.1, therefore, does not bar her from recovering pre-petition interest, pre-petition attorneys' fees, and pre-petition court costs as part of her claim.

Section 15.1 appears to me to be unambiguous.  In my initial reading of the language in question, I had no doubt that "post-petition" modified, described, and limited all of the following five components of a claim.  The alternative application of grammar would be awkward and would require that the adjective "post-petition" be inserted into the list five times,[14] which would have been unduly cumbersome.  It would have been quite simple for Debtor to have written the phrase at issue other ways that might more clearly present Debtor's current interpretation of Section 15.1 to a reader of the Plan.[15]  The existing language informs the reader that "post-petition" modifies interest and all of the other four terms.[16]

---

[14]     The phrase would be "post-petition interest, post-petition late charges, post-petition penalties, post-petition attorneys' fees, or post-petition court costs."
[15]     For example, the phrase could also have been easily rendered as "late charges, penalties, attorneys' fees, court costs, or post-petition interest."
[16]     In Section 1.42 of its Plan, Debtor uses the same grammatical structure as in Section 15.1. Defining what constitutes a Lien, Section 1.42 refers to "any valid and duly perfected mortgage, lien, pledge, charge, security interest, or other security device . . . ." If Debtor's present attempted reading of Section 15.1 were applied to Section 1.42 of its Plan, the entire list of liens, other than mortgage liens, would constitute Liens even if not valid or duly perfected.  The clear meaning of the list is that all such possible liens are not liens unless they are valid and duly perfected.
      In Section 12.2 of the Plan, Debtor again uses the same grammatical structure as in Section 15.1, except that the modifier follows the list, rather than preceding it.  Describing the re-vesting of assets, Section 12.2 refers to "all Claims, Liens, charges and other interests of creditors arising prior to the Petition Date . . . ." If Debtor's present attempted reading of Section 15.1 were applied to Section 12.2 of its Plan, all post-petition Claims, Liens, and charges would be divested from Debtor's assets, which would surprise those who received a post-petition lien to secure Debtor's obligations to them.

I see no need to examine extrinsic evidence to interpret Section 15.1.
The intent of the parties is contained in the writing itself.  In re Stuart, 402 B.R.
111, 127 (Bankr. E.D. Pa. 2009).  If the language of a contract "is clear and
unambiguous, the focus of interpretation is upon the terms of the agreement as
manifestly expressed, rather than as, perhaps, silently intended."  Id. quoting
Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc., 247 F.3d 79, 92-93 (3d Cir.
2001); see also Biase v. Congress Financial Corp. (In re Tops Appliance City,
Inc.), 372 F.3d 510, 514 (3d Cir. 2004).  I conclude that my reading of Section
15.1 is that "post-petition" modifies all five terms listed thereafter, including
"interest," "attorneys' fees," and "court costs."

If and to the extent Section 15.1 might be deemed ambiguous,
however, any ambiguity must be construed against Debtor as the drafter of the
offending language.  Stuart, 402 B.R. at 132.  I therefore find and conclude that
Section 15.1 bars unsecured creditors, including Ansel, from collecting post-
petition interest, post-petition attorneys' fees, and post-petition court costs on
account of their claims.  It does not prohibit Ansel from collecting pre-petition
interest, pre-petition attorneys' fees, or pre-petition court costs on account of her
claim.

---

These two examples from Debtor's Plan are only two of possibly others, but I point to them
simply to show that Debtor's structure of having a single adjective modify, describe, and limit a series of
nouns is not uncommon and constitutes the intention of the Plan language in Section 15.1.

## G.  The Record Is Insufficient for Me To Determine What Portion of Ansel's Claimed Interest, Attorneys' Fees, and Court Costs Are Pre- or Post-Petition

I cannot determine on the record that exists before me what portions of Ansel's claim for interest, attorneys' fees, and court costs are pre- or post-petition.  I will therefore require that the parties calculate, prepare, and file a stipulation identifying these amounts.  If the parties cannot agree to a stipulation by the deadline set forth in the accompanying Order, I will conduct a hearing so the parties can present evidence to establish the amount of pre-petition interest, pre-petition attorneys' fees, and pre-petition court costs that will be included and allowed in Ansel's claim.

# V.  CONCLUSION

Debtor attempts, through its Supplemental Objection, to use Section 502(b)(7) of the Bankruptcy Code to limit Ansel's claim.  Debtor is barred, however, by its own limitation in Section 14.1 of Debtor's Plan requiring that all objections to claims must have been filed before February 12, 2011.  Debtor did not raise its Section 502(b)(7) defense until its Supplemental Objection was filed on February 14, 2011, and so it was time-barred.  If Debtor's attempt to raise the Section 502(b)(7) argument is not time-barred, I reject Debtor's Section 502(b)(7) argument by the application of the equitable remedy of laches.  Finally, I also reject Debtor's argument on the substance and inapplicability of Section 502(b)(7). I find and conclude that Section 502(b)(7) does not limit Ansel's claim.

Debtor, in its Supplemental Objection, also takes issue with that portion of Ansel's claim that seeks interest, attorneys' fees, and court costs. Debtor maintains that those portions of her claim seeking post-petition interest, all attorneys' fees, and all court costs are not permitted pursuant to Section 15.1 of the Plan.  Ansel counters that Debtor cannot raise this defense because it was late in filing the Supplemental Objection.  Debtor's limitation based on Section 15.1 is not time-barred, however, because the Plan specifically bars any such recovery and controls all claims, whether objected to before February 12, 2011, or after.  Section

30

15.1 bars post-petition interest, attorneys' fees, and court costs, but permits pre-petition interest, attorneys' fees, and court costs.

The Massachusetts judgment that serves as the foundation of Ansel's claim is not helpful in differentiating between pre- and post-petition, interest, attorneys' fees, and court costs. I will direct that the parties calculate, prepare, and file a stipulation that details the pre- and post-petition amounts of each portion of Ansel's claim. If the parties are unable to stipulate to these amounts, I will conduct a hearing to determine their amounts.

My resolution of Debtor's Supplemental Objection also resolves all issues related to Ansel's Motion for Determination of Any Remaining Issues on Debtor's Objection to Claim of Ansel, which will therefore be denied and dismissed as moot.

An appropriate Order follows.

Date:  July 24, 2013

BY THE COURT

RICHARD E. FEHLING
United States Bankruptcy Judge